UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

       v.

JERRY CIAURI a/k/a Fat Jerry,

              Defendant.
------------------------------------------------------------X

**MEMORANDUM & ORDER**
18-CR-337-1 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

On March 26, 2019, Jerry Ciauri ("Defendant") pled guilty to Count One of the Indictment. The Court now sentences him and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to time served to be followed by one year of supervised release, and the $100.00 mandatory special assessment.

## BACKGROUND

On August 1, 2018, the Government filed a Superseding Indictment charging Defendant with one count of Racketeering, in violation of 18 U.S.C. §§ 1962(c) and 1963. Indictment, ECF No. 48. On March 26, 2019, Defendant pled guilty to Count One of the Indictment pursuant to a plea agreement. *See* Plea Agreement, ECF No. 146.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

**I.    Legal Standard**

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. §

3553(c)(2). The court must also "state[] with specificity" its reasons for so departing or varying "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

## II. Analysis

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

#### i. History and Characteristics of the Defendant

Defendant was born on August 16, 1958 in Manhattan, New York, to Jerome Ciauri, Jr. and Margerate Alonge. Presentence Investigation Report ("PSR") ¶ 186, ECF No. 172. Defendant's father died in 1989 from blood disease. *Id.* Prior to his death he was an electrician. *Id.* He remarried Ann Ciauri who is in good health and is a retired hairdresser. *Id.* Defendant's mother died in 1998 from lung cancer. *Id.* Prior to her death she worked as a waitress. *Id.*

Defendant has two half-siblings, both of whom are in good health, are aware of Defendant's current conviction, and remain supportive. *Id.* ¶ 187–88. Defendant described an unremarkable childhood in his presentence investigation interview. *Id.* ¶ 189. He maintained a relationship with both parents and was raised under middle-income economic circumstances. *Id.*

Defendant married Camille Striano in 1984, but divorced in 1986. *Id.* ¶ 190. Their marriage produced a daughter, Camille Ciauri. *Id.* Camille Ciauri is in good health, resides in Staten Island with her child, and works as a car salesperson. *Id.* Ms. Ciauri stated Defendant is a "loving and caring father" and she was shocked to learn about Defendant's participation in the instant offense. *Id.* ¶ 191.

Defendant married Josephine Dagostino in 2014. *Id.* ¶ 193. Ms. Dagostino is in good health and is not employed outside the home. *Id.* Ms. Dagostino has a daughter from a previous relationship, Stephanie Sandmarco. *Id.* Ms. Sandmarco is 32, intellectually disabled with cerebral palsy, and requires 24-hour care/supervision. *Id.* Ms. Sandmarco resides with Defendant and Ms. Dagostino. *Id.* Before his health declined, Defendant stated he cooked Ms. Sandmarco's meals, took her to the doctor, and provided her with "a lot of attention." *Id.* Defendant related incarceration for the instant office would have a "devastating" impact on Ms. Sandmarco. *Id.* Ms. Dagostino described her husband as a "very loving and caring person" and noted Defendant's incarceration would be devastating to her daughter, Ms. Sandmarco. *Id.* ¶ 194.

Defendant is a lifelong resident of New York. *Id.* ¶ 195. Since 2012, he has resided in Brooklyn with his wife and stepdaughter. *Id.* Defendant suffers from congenital heart failure, gout, kidney disease, high blood pressure, type II diabetes, and swollen legs. *Id.* ¶ 197–200. In 2016, he suffered a mild heart attack. Defendant has no recent substance abuse history. *Id.* ¶ 201–02.

Defendant suffers from a variety of medical ailments. At the time of the writing of the Presentence Report, Defendant had heart disease and a seizure disorder. Def. Suppl. Mem. 3 at 1, ECF No. 306. Currently, Defendant suffers from "metabolic encephalopathy and endures

3

hemodialysis for end stage renal disease." *Id*. According to his doctors, Defendant requires "life-sustaining hemodialysis treatments three times a week and requires a strict regimen of treatment and a prescribed diet daily in order to sustain his life." *Id*. at 1–2 (internal quotations omitted).

      ii.   <u>Nature and Circumstances of the Offense</u>

The investigation into the instant offense, and Defendant's criminal history revealed Defendant is a soldier and associate of the Colombo crime family of La Cosa Nostra, an organized crime group operating in the Eastern District of New York and elsewhere. *Id*. ¶ 6, 17.

Between approximately 2013 and his arrest in July 2018, Defendant spearheaded a loansharking business, through which he gained access to significant amounts of money and lent it at high interest rates under the threat of bodily harm if debtors did not make timely payments. *Id.* ¶ 21. Defendant explicitly threatened to kill a partner in the business who fell behind in collecting interest payments from debtors. *Id.* The partner who was threatened and his wife later became a cooperating witness with the government. *Id.* Specifically, in 2017, Defendant told the witness over the telephone, "You can run upstate all you want, I'll go up there and shoot you and your wife in the head." *Id.* In addition to the telephone threats, Defendant also made threats via text message and engaged in a pattern of stalking debtors to intimidate. *Id.* ¶ 22–23 and 48–52.

Once the witness stopped assisting Defendant, Defendant recruited another person to fill the role of collecting interest payments. *Id.* ¶ 24. Records seized from Defendant's residence indicate he had at least seven customers who owed a combined $44,000.00 and made weekly payments of $1,460.00. *Id.* ¶ 25.

Additionally, between February 2014 and February 2018, Defendant directed an illegal gambling venture in a Brooklyn bar comprising of a Monday night football pool policy scheme. *Id.* ¶ 53.

Defendant was arraigned on the Superseding Indictment on August 16, 2018. ECF No. 60. On March 26, 2019, Defendant pled guilty to Count One of the superseding indictment: Racketeering in violation of 18 U.S.C. § 1962. *See* Plea Agreement. On February 11, 2019, Defendant was released on a $1 million Bond with additional conditions of *inter alia,* home confinement and electronic monitoring, and no use of cellular telephone, internet or email. ECF No. 130.

### B.     The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offense and punishes Defendant accordingly. It seeks to deter Defendant from further criminal activity, from disregarding U.S. law, and from engaging in illicit activity.

### C.     The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to Count One of the Superseding Indictment charging him with Racketeering, in violation of 18 U.S.C. § 1962(c).  *See* Plea Agreement.  Within Count One, Defendant admitted to Racketeering Acts 7D and 8D.  *Id.*  Racketeering Act 7D charges that Defendant, together with others, participated in the use of extortionate means to collect one or more extensions of credit from John Doe #3, between December 2017 and June 2018, in violation of 18 U.S.C. § 894(a)(1).  Racketeering Act 8D charges that Defendant, together with others, participated in the use of extortionate means to collect one or more extensions of credit from John Doe #4, between December 2017 and June 2018, in violation of 18 U.S.C. § 894(a)(1).  By statute, Defendant faces a maximum term of imprisonment of twenty years and a maximum term of supervised release of three years.  18 U.S.C. § 1963(a) and 3583(b) and (e).  Defendant also faces a maximum fine of $250,000.00, *id*. § 3571 and 1963(a); and a mandatory special assessment of $100.00, 18 U.S.C. § 3013.  Defendant may be sentenced to a minimum probation of one year and a maximum probation of 5 years.  18 U.S.C. § 3561(c)(1).  One of the following must be imposed as a condition of probation unless extraordinary circumstances exist: a fine, restitution, or community service. 18 U.S.C. § 3563(a)(2).

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]"  *Id*. § 3553(a)(4)(A).

All parties agree, for a violation of 18 U.S.C. § 1962(C), the applicable Guideline is § USSG § 2E1.1(a)(2), which provides the underlying racketeering activity determines the base offense level.  United States Sentencing Commission, Guidelines Manual ("USSG") § USSG §

2E1.1(a)(2). The Commentary to Guideline 2E1.1 states, "[w]here there is more than one underlying offense, treat each underlying offense as if contained in a separate count of conviction for the purpose of subsection (a)(2)." Application Note 1. The Government advised it can prove by a preponderance of the evidence that although not convicted of the activity, Defendant was involved in additional conduct (Count 1, Racketeering Acts 1, 2, 6, 9, 10, and 11). PSR ¶ 3. Per *United States v. Ruggiero*, 100 F.3d 284 (2d Cir. 1996), all racketeering activity in furtherance of the racketeering enterprise, charged and uncharged, must be taken into consideration for guideline purposes, as it is considered relevant conduct to the racketeering charges.

Count 1, Racketeering Acts 1 and 6, Extortionate Collection of Credit Conspiracy and Extortionate Collection of Credit—John Doe #2, are grouped together per USSG § 3D1.2(b) and cannot be grouped with any other racketeering acts, per USSG § 3D1.2. All parties agree, the applicable Guideline for extortionate collection of credit conspiracy and extortionate collection of credit is USSG § 2E2.1(a), which provides a base offense level of 20. Because Defendant was a manager in the instant offense, the offense level is increased by two (2) levels per USSG § 3B1.1(c) resulting in an adjusted offense level (subtotal) of 22.

Count 1, Racketeering Acts 2, 6, 7, 8, 9, 10, and 11 cannot be grouped with any other acts per the grouping guidelines of USSG § 3D1.2. All parties agree, the applicable Guideline for Racketeering Act 7, extortionate collection of credit conspiracy and extortionate collection of credit —John Doe #3 is USSG § 2E2.1(a), which provides a base offense level of 20. Because Defendant was a manager in the instant offense, the offense level is increased by two (2) levels per USSG § 3B1.1(c) resulting in an adjusted offense level (subtotal) of 22.

All parties agree, the applicable Guideline for Racketeering Act 8, extortionate collection of credit conspiracy and extortionate collection of credit—John Doe #4 is USSG § 2E2.1(a), which provides a base offense level of 20. Because Defendant was a manager in the instant offense, the offense level is increased by two (2) levels per USSG § 3B1.1(c) resulting in an adjusted offense level (subtotal) of 22.

All parties agree, the applicable Guideline for Racketeering Act 9, extortionate collection of credit conspiracy and extortionate collection of credit—John Doe #5 is USSG § 2E2.1(a), which provides a base offense level of 20. Because Defendant was a manager in the instant offense, the offense level is increased by two (2) levels per USSG § 3B1.1(c) resulting in an adjusted offense level (subtotal) of 22.

All parties agree, the applicable Guideline for Racketeering Act 10, extortionate collection of credit conspiracy and extortionate collection of credit—John Doe #6 is USSG § 2E2.1(a), which provides a base offense level of 20. Because Defendant was a manager in the instant offense, the offense level is increased by two (2) levels per USSG § 3B1.1(c) resulting in an adjusted offense level (subtotal) of 22.

All parties agree, the applicable Guideline for Racketeering Act 11, extortionate collection of credit conspiracy and extortionate collection of credit—John Doe #7 is USSG § 2E2.1(a), which provides a base offense level of 20. Because Defendant was a manager in the instant offense, the offense level is increased by two (2) levels per USSG § 3B1.1(c) resulting in an adjusted offense level (subtotal) of 22.

All parties agree, the applicable Guideline for Racketeering Act 2, illegal gambling—Monday night football pool policy scheme is USSG § 2E3.1(a)(1), which provides a base offense level of 12. Because Defendant was a manager in the instant offense, the offense level is

increased by two (2) levels per USSG § 3B1.1(c) resulting in an adjusted offense level (subtotal) of 14.

The greater of the adjusted offense levels is 22. USSG § 2E2.1(a); PSR ¶ 165. Pursuant to USSG § 3D1.4(a), (b) and (c) six and a half (6.5) units are assigned to the racketeering offense. Because number of units assigned is more than five (5), the offense level is increased by five levels. USSG § 3D1.4. The resulting Combined Adjusted Offense Level is twenty-seven (27). PSR ¶ 167.

The parties agree Defendant has clearly demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels. *Id.* § 3E1.1(a). Because the Government was notified in a timely manner of Defendant's intention to enter a plea of guilty, the offense level is decreased by one additional level. *Id.* § 3E1.1(b). All parties agree this calculation yields an offense level of 24. PSR ¶ 171.

A total offense level of 24 and a criminal history category of II yields a Guidelines term of imprisonment range of 57 to 71 months. USSG Ch. 5, Part A. However, all parties agree Defendant is eligible for an additional one-level reduction, pursuant to the Plea Agreement, because all Defendants in the case pled guilty by a specific deadline ("the Global Resolution"). Plea Agreement at 3. With this reduction, Defendant's total offense level is 23. A total offense level of 23 and a criminal history category of II yields a Guidelines term of imprisonment range of 51 to 63 months. USSG Ch. 5, Part A. The Guidelines further recommend a maximum term of supervised release between one and three years, *id.* § 5D1.2(a)(2), and a fine of between $20,000.00 and $200,000.00, *id.* § 5E1.2(c)(3). The Guidelines advise Defendant is ineligible for probation. *Id.* § 5B1.1 n.2.

Probation recommends a sentence of 51 months in custody, a $20,000.00 fine, and three years of Supervised Release. *See* Probation Sentencing Rec. Mem. at 1. The Government does not specifically recommend a sentence. Defense counsel requests time served and a probationary sentence, noting Defendant's advanced age, which minimizes the need for specific deterrence; his good conduct while on bond; and his necessary medical care as detailed extensively in their submissions. Def. Mem. at 6–7.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5). This factor is not relevant to Defendant's sentencing.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor, which requires the Court to touch upon "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7). Restitution shall be

10

ordered in this case. The government has not yet provided probation with the specific restitution owed to John Does #3 and 4. PSR ¶ 224. *See* 18 U.S.C. § 3663.

## CONCLUSION

A sentence of time served to be followed by one year of supervised release, and the $100.00 mandatory special assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report and the addenda thereto, barring any errors contained therein, to the extent they are not inconsistent with this opinion.

SO ORDERED.

s/ WFK

_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: November 19, 2021
      Brooklyn, New York